## Case No. 2,994.

### COLGATE v. WESTERN UNION TEL. CO.

[4 Ban. & A. 562;[1] 17 O. G. 194.]

Circuit Court, S. D. New York. Oct. 27, 1879.

VIOLATION OF INJUNCTION RESTRAINING INFRINGEMENT OF PATENT.

The defendant company, having been restrained by injunction from using the plaintiff's patented invention, except the identical wires or cables then in use by it, and also "from selling, transferring, lending, leasing or parting with in any manner, any wires or cables embodying said invention, or conferring upon any other person, persons or corporation, either in whole or in part, or alone, or in conjunction, or in connection with the defendant, any use of, or right to use any such wires or cables," and having, subsequent to the service of the injunction, entered into an agreement giving to a railroad company the use of cables embodying the patented invention: *Held*, that the same amounted to a violation of the injunction.

[In equity. Bill by Clinton G. Colgate against the Western Union Telegraph Company to restrain infringement of letters patent No. 65,019, granted to George B. Simpson, May 21, 1867, for an improvement in insulating submarine cables. There was a decree for complainant (Case No. 2,995), and a motion is now made for an attachment for violation of the injunction therein granted.]

Betts, Atterbury & Betts, for complainant. Porter, Lowrey, Soren & Stone, for defendant.

BLATCHFORD, Circuit Judge. By the injunction, the defendant and its agents were restrained from using the invention, except the identical wires or cables then used by the defendant, "and also from selling, transferring, lending, leasing or parting with, in any manner, any wires or cables embodying said invention, or conferring upon any other person, persons, or corporation, either in whole or in part, or alone, or in conjunction, or in connection with the defendant, any use of, or right to use any such wires or cables."

---

[1] [Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission.]

[1] [Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission.]

The injunction was served on Norvin Green, the president of the defendant, on the 17th of January, 1879.

The contract of March 8th, 1879, made by the defendant, by Mr. Green, as its president, with the New York, Lake Erie and Western Railroad Company, contains an agreement by the defendant, to give to the railroad company, free of charge to it, "the exclusive use and enjoyment of three cable-conductors across the Hudson river, with all necessary connections into the railroad company's offices in Jersey City and New York," and also to "maintain the said cable-conductors and connections without cost or expense to the railroad company." This is not an agreement to furnish gutta-percha-covered wires. It would have been fulfilled by furnishing any cable conductors and connections. Mr. Green, however, states in his affidavit that the said agreement refers to three cables insulated with gutta-percha, which had been used by the Erie Railway Company and its receiver, the predecessors of the new railroad company, under a like arrangement with each of them. The cable conductors actually furnished under the agreement with the new company have been the said three cables insulated with gutta-percha.

Under the injunction, the right of the defendant to use for itself the identical wires or cables it was using for its own proper business is one thing, and the right to confer on any other person or corporation the right to use any wires or cables embodying the patented invention is another thing. The latter is forbidden. Yet the defendant and Mr. Green have done it by the agreement in question, in connection with the action taken under it, for thereby the railroad company is using, under a grant from the defendant, infringing cables. This is the very thing the injunction was designed to prevent. The intention was that the defendant should not establish any new relation with any new person or corporation in respect to gutta-percha-covered wires, by any new arrangement. If the existing contract applied to the new corporation, it did so without any new arrangement. If a new agreement was necessary to bring in the new party and confer on it the right to use the cables, the new agreement was a violation of the injunction. Mr. Green states, in his affidavit, that the defendant claimed that the existing arrangement applied to the new company, and it must be inferred that the new company did not assent to this view, for Mr. Green further states that the new agreement was executed, so far as the defendant was concerned, as a recognition by the new company of its existing liability, and of its willingness to continue the stipulations of the existing contract. An attachment must be issued against the defendant, and Mr. Green, in respect of this violation of the injunction. The granting of licenses by the Gold and Stock Telegraph Company, through Mr. Green and Mr. Prescott, as its officers

and agents, is no violation of an injunction against the defendant and its agents.